733 So.2d 372 (1999)
Rodney BELL, Appellant,
v.
STATE of Mississippi, Appellee.
No. 97-KP-00500 COA.
Court of Appeals of Mississippi.
February 23, 1999.
Rehearing Denied May 18, 1999.
*373 Rodney Bell, Pro Se.
Office of the Attorney General by Charles W. Maris Jr., Attorneys for Appellee.
BEFORE McMILLIN, P.J., KING AND SOUTHWICK, JJ.
McMILLIN, P.J., for the Court:
¶ 1. The case now before the Court is an appeal by Rodney Bell of his criminal convictions for armed robbery and aggravated assault. Bell raises six issues for consideration by this Court whichhe argues require reversal of his convictions. We disagree and affirm the jury's verdict and resulting judgment.

I.

Facts
¶ 2. Taken in the light most favorable to the State's theory of the case, the evidence shows that Bell and three companions were in a motor vehicle that was stopped in a public road. The vehicle was struck from the rear by another vehicle owned by Willie Jones and driven by his cousin, Joe Baldwin. Immediately after the accident, Bell and his companions emerged from their vehicle, all armed with firearms. *374 One of them accosted the driver of the other vehicle and held him at gunpoint while others of the group removed a tape deck from the Jones vehicle. Another individual, Larry Easley, arrived on the scene and apparently made comments that Bell and his companions viewed as disparaging. As a result, someone suggested that Easley ought to be shot and Bell obliged by discharging his firearm striking Easley in the chest. Bell and his associates then departed the scene. Police were later able to locate the van in which Bell and the others were driving and discovered four firearms and the stolen tape deck in the vehicle. Bell did not deny ownership of one of the firearms and did not deny shooting Easley, claiming only that he had done so in necessary self-defense. Bell was indicted along with the other vehicle occupants for armed robbery in connection with the taking of the tape deck and aggravated assault in the shooting of Easley. Bell was tried separately from his co-defendants and was convicted on both counts. This appeal ensued.

II.

The First Issue: Denial of the Right to Compel the Attendance of Witnesses
¶ 3. Bell claims that he was denied the right guaranteed him under the Sixth Amendment to the Constitution of the United States to "have compulsory process for obtaining witnesses in his favor." Specifically, Bell claims that other members of his group could have, if called to testify, provided evidence that would have established Bell's lack of involvement in the crimes. He argues that the State, by trying him at a time when charges were still pending against his other co-defendants, ensured that these potentially helpful defendants would be unavailable to the defense because, as a matter of self-preservation, they could be expected to invoke their Fifth Amendment right against selfincrimination and refuse to testify.
¶ 4. Thus, Bell's argument, in effect, is that a defendant in a criminal proceeding where there are multiple defendants has a constitutional right to require the State to finally dispose of the charges against the remaining defendants before proceeding against him if that sequence of disposition would increase the likelihood that the other co-defendants would be available to offer testimony helpful to the defense. Bell offers no authority for the proposition that such a right exists under the Sixth Amendment. Further, if such right exists as to Bell, it necessarily exists as to the remaining co-defendants, giving rise to the logically impossible circular proposition that the State would be unable to try any co-defendant except one who voluntarily agreed to be tried without the prospect of assistance at trial from his confederates. We do not believe this to be the law. Finding that trying Bell in advance of one or more of his other co-defendants did not violate Bell's Sixth Amendment right to compel witnesses to appear on his behalf, we decline to reverse Bell's conviction on this basis.

III.

The Second Issue: Bell's Claim of Ineffective Assistance of Counsel
¶ 5. In this issue, Bell complains that his first appointed counsel did little trial preparation, but instead spent most of his time trying to persuade Bell to accept a negotiated guilty plea. This attorney ultimately withdrew his representation of Bell in the case. The record indicates that, shortly after the first attorney withdrew, Bell was appointed a substitute counsel. Beyond his very evident irritation with the perceived inattention of his first attorney, Bell produces nothing substantive to demonstrate any prejudice to his trial defense arising out of the failure of his first attorney to devote more time to case preparation. Assuming for sake of argument that Bell's first attorney's lack of effort on his behalf was serious enough to constitute an *375 effective deprivation of the right of representation guaranteed under the Sixth Amendment, in order to form the basis of relief, there would yet have to be some indication that, but for the ineffectiveness of counsel, the result of the trial would likely have been different. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). There is nothing to suggest in this record that Bell's second attorney was unable to do the necessary investigation and preparation to mount a meaningful defense at trial because of his predecessor's alleged dilatory conduct. Thus, this claim is without merit.
¶ 6. Bell claims, however, that his lack of effective representation did not end with the change in attorneys. Rather, he claims that his second attorney was so inept in preparing for trial and conducting his defense at trial that, on this basis also, he is entitled to have his conviction reversed. Specifically, Bell says that his attorney failed to attempt to suppress introduction of those weapons retrieved from the vehicle besides the one he admitted owning. Such a motion to suppress would, beyond question, have been fruitless. In relating the facts of this incident to the jury, the State was entitled to inform the jury of the full story of what transpired. Hubbard v. State, 437 So.2d 430, 436 (Miss. 1983). The State's theory, supported by the evidence, was that Bell and his companions were pursuing a common purpose in their activities. Proof that others acting in conjunction with Bell were also armed was, undoubtedly, relevant to the jury's understanding of exactly what transpired on the evening in question. We see no arguable basis to suggest that evidence tending to establish that there were multiple armed defendants, including the introduction of the firearms themselves, would have been inadmissible. The right to a vigorous defense does not include the right to insist that defense counsel pursue facially-invalid objections or file motions having no arguable chance for success. To the contrary, such overzealous defense tactics can have the real possibility of working against the defendant's best interests by antagonizing the trial court and alienating members of the jury.
¶ 7. Bell also faults his attorney for not calling Terry Surall, one of his co-defendants, as a witness. Surall had, at some point, given a brief written "to whom it may concern" statement that, though lacking crystal clarity, could be interpreted as somewhat exculpatory as to Bell's involvement in the crimes. Bell concedes that Surall would have, in all likelihood, invoked his Fifth Amendment right and refused to verify his out-of-court written statement, but he argues that his attorney had a duty to give his best effort to get this helpful information before the jury. Bell contends that, by failing to even make the effort to call Surall, though the chance of success was dismally small, his counsel failed to meet the test of effective assistance of counsel.
¶ 8. The problem with this proposition is one of fact, however, and not one of law. The record demonstrates that, by the time Bell went to trial, Surall had reached an agreement with the prosecution involving his own legal difficulties that included his willingness, if called, to testify for the State in Bell's trial. There was strong indication in the record that, if called, Surall not only would not invoke his Fifth Amendment protections, but would freely testify in a manner that would be substantially damaging to Bell. There is evidence to suggest, in fact, that the sole reason the State did not call Surall in its case-in-chief was that the State considered Surall a "loose cannon" and preferred to make its case through other proof. We are satisfied that, on this record, Bell's attorney's decision not to call Surall was a legitimate tactical decision, for which he cannot be faulted (see, e.g., Mohr v. State, 584 So.2d 426, 430 (Miss.1991)), rather than mere unwillingness to make the effort to pursue every reasonable means to obtain his client's acquittal.
*376 ¶ 9. Bell advances the additional argument that his attorney demonstrated his ineffectiveness by not calling other co-defendants besides Surall. It is true that a defendant has a right to call a co-defendant, all the while knowing that the co-defendant will invoke his Fifth Amendment rights and refuse to offer evidence that might prove exculpatory. Hall v. State, 490 So.2d 858, 859 (Miss.1986). However, there is no authority for the proposition that such a largely pointless act must be undertaken in every instance. We conclude that it would be a matter of legitimate trial strategy to decide whether such an effort would be helpful or harmful to the defense's presentation and to proceed accordingly. Bell offers nothing to suggest that any of his co-defendants were willing to step forward and offer information that would tend to establish his innocence. By calling a co-defendant without some measure of certainty as to how that co-defendant would testify (assuming for the moment that the co-defendant would voluntarily waive his Fifth Amendment rights), defense counsel would expose his client to the real possibility that the co-defendant would, instead of providing information helpful to the defense, use the opportunity to shift the blame for the incident from himself to the defendant on trial. Defense counsel in this case, apparently already on his guard concerning the possible volatility of Surall's testimony, seems to have chosen to avoid the risk that one of the other co-defendants, if called, might take the opportunity to follow Surall's lead. In this circumstance, there is simply no way to conclude that defense counsel's failure to try to obtain testimony from any of Bell's co-defendants demonstrated his ineffectiveness. Bell is entitled to no relief on this theory.

IV.

Denial of a Speedy Trial
¶ 10. Bell also claims that he was deprived of his constitutional right to a speedy trial. He does not invoke the Mississippi statute requiring a trial within 270 days of arraignment. See Miss.Code Ann. § 99-17-1 (Rev.1994). His challenge is, instead, based on federal constitutional considerations emanating from the Sixth Amendment. The State correctly points out that Bell never petitioned the trial court for a speedy trial, nor did he object at the trial court level that his trial, once commenced, was so tardily begun that irreversible prejudice had arisen by virtue of his Sixth Amendment protections.
¶ 11. In that circumstance, we agree with the suggestion of the United States Supreme Court that not every defendant, though entitled under the constitution to a speedy trial, is anxious to have that right vindicated. See Barker v. Wingo, 407 U.S. 514, 521, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). As the Supreme Court observed, a defendant may be perfectly content to endure multiple and prolonged delays in bringing his case to trial. Id. The defendant may be in hopes that time will result in the unavailability of potential witnesses, will cloud the memory of those still available, will result in the loss of other available evidence, or will simply remove some of the urgency from the facts so that jurors may take a more benign view of the matter. We conclude, therefore, that Bell's failure to affirmatively raise the issue at the trial level works as a bar to our consideration of the issue on appeal under the well-known principle that the primary purpose of an appellate court is to correct erroneous rulings by the trial court and not to rule on alleged errors that were not presented to the trial court for decision in the first instance. Sanders v. State, 678 So.2d 663, 670-71 (Miss.1996). Because delays in bringing a matter to trial may work to the defendant's advantage, we do not consider a claim that the defendant was denied a speedy trial to be a matter of plain error or fundamental error that may be raised for the first time on appeal. Therefore, we find Bell's claim on this issue to be procedurally barred.
*377 ¶ 12. THE JUDGMENT OF THE CIRCUIT COURT OF LOWNDES COUNTY OF CONVICTION OF COUNT I AGGRAVATED ASSAULT AND SENTENCE OF TWENTY YEARS AND COUNT III ARMED ROBBERY AND SENTENCE OF TEN YEARS TO RUN CONCURRENTLY WITH THE SENTENCE IN COUNT I, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LOWNDES COUNTY.
BRIDGES, C.J., THOMAS, P.J., COLEMAN, DIAZ, KING, LEE, PAYNE, AND SOUTHWICK, JJ., CONCUR.
IRVING, J., CONCURS IN RESULT ONLY.