# IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI
### NO. 2001-KA-01343-COA

MCKINLEY BELL                                                    APPELLANT

v.

STATE OF MISSISSIPPI                                              APPELLEE

| | |
|---|---|
| DATE OF TRIAL COURT JUDGMENT: | 07/17/2001 |
| TRIAL JUDGE: | HON. FRANK G. VOLLOR |
| COURT FROM WHICH APPEALED: | WARREN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | PATRICK JOSEPH MCNAMARA JR. |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: BILLY L. GORE |
| DISTRICT ATTORNEY: | G. GILMORE MARTIN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | BURGLARY OF A DWELLING, AS A VIOLENT HABITUAL OFFENDER - LIFE WITHOUT BENEFIT OF PAROLE |
| DISPOSITION: | AFFIRMED - 10/22/2002 |
| MOTION FOR REHEARING FILED: | |
| CERTIORARI FILED: | |
| MANDATE ISSUED: | |

BEFORE THOMAS, P.J., MYERS, AND BRANTLEY, JJ.

BRANTLEY, J., FOR THE COURT:

¶1. McKinley Bell was convicted of burglary of a dwelling by a Warren County Circuit Court jury. Bell appeals, arguing that the trial court erred by violating his constitutional and statutory right to a speedy trial and in allowing in-court identification by two witnesses. In addition, Bell argues that the prosecution failed to prove venue and that the trial court erred in taking judicial notice that Vicksburg is located in Warren County. Finding no error, we affirm.

## FACTS

¶2. On April 12, 2000, Patricia Steed and Mike Curtis, employees of Vicksburg Paint and Glass, observed an African American male with long hair emerge from the woods behind the home of Teresa Reed which is across the street from their business. They watched him for several minutes until they saw the man they later identified as Bell leave the home pushing a lawn mower down the street and carrying a weed eater.

¶3. Bell was arrested and indicted for burglary of a dwelling and grand larceny. The grand larceny portion of the indictment was quashed. During the trial both witnesses testified and identified Bell as the person they saw at Reed's home taking away the mower and weed eater. In addition, several officers from the Vicksburg Police Department along with the victim, Reed, testified as to the events and investigation. Bell testified on his own behalf, denying any involvement in the crime.

¶4. The jury convicted Bell of burglary of a dwelling. A sentencing hearing was later held, at which time Bell was adjudicated an habitual offender. Aggrieved, Bell appeals to this Court alleging several errors on the part of the trial court.

ANALYSIS OF THE ISSUES PRESENTED

### I. WHETHER THE TRIAL COURT ERRED IN DENYING BELL'S MOTION TO DISMISS FOR VIOLATING HIS RIGHT TO A SPEEDY TRIAL.

¶5. Bell argues that the State violated his right to a speedy trial by failing to bring him to trial within the 270-day period prescribed by statute and by the U.S. Constitution and as a result his case should have been dismissed. However, the State contends that the delays were due to the Bell's own actions. The record discloses the following pertinent dates:

04/28/00 arrest

07/18/00 indictment

07/20/00 arraignment

07/27/00 motion by defendant for psychiatric examination

08/11/00 order granting defendant's motion for psychiatric examination

10/02/00 psychiatric report completed

12/07/00 motion to reduce bond

01/30/01 notice of trial date for 6/4/01

05/01/01 motion to dismiss

undated letter demanding speedy trial

06/06/01 order denying motion to dismiss

06/07/01 order reducing bond

notice of trial date 06/25/01

06/14/01 renewal of motion to dismiss

06/20/01 motion to quash count II of indictment

motion to suppress evidence

06/25/01 trial date

*1. Constitutional right to a speedy trial*

¶6. Although Bell alleges both that his constitutional and statutory right to a speedy trial was violated, only the statutory argument was pursued at the trial court level. At the June 14, 2001 hearing on the re-motion, the statutory ground was only discussed by the defendant and ruled on by the court. The statutory right and constitutional right are separate rights which require separate analysis. *Simmons v. State*, 678 So. 2d 683, 686 (Miss. 1996). Bell failed to acquire a ruling on the constitutional issue. "It is the responsibility of the movant to obtain a ruling from the court on motions filed by him and failure to do so constitutes a waiver of same."*Martin v. State*, 354 So. 2d 1114, 1118 (Miss. 1978). Therefore, the constitutional issue is waived. *Bell v. State*, 733 So. 2d 372, 376 (¶11) (Miss. Ct. App. 1999).

*2. Statutory right to a speedy trial*

¶7. According to Mississippi law. "[u]nless good cause be shown, and a continuance duly granted by the court, all offenses for which indictments are presented to the court shall be tried no later than two hundred seventy (270) days after the accused has been arraigned." Miss. Code Ann. § 99-17-1 (Rev. 2000). The analysis of the statutory right to a speedy trial is extremely fact specific and relies on whether the defendant or prosecution caused the delays. *Sharp v. State*, 786 So. 2d 372, 377 (¶4) (Miss. 2001). Therefore, we first must calculate the number of days between the arraignment and trial date not including the actual date of the arraignment. *Id.* at 378 (¶5).

¶8. From arraignment to the date of trial, 339 days elapsed. However, sixty-seven of those days are attributed to the defendant's request for a psychiatric evaluation which are charged against the defendant. *Elder v. State*, 750 So. 2d 540, 543 (¶8) (Miss. Ct. App. 1999). Motions made and granted on behalf of the defense are charged against them. *Herring v. State,* 691 So. 2d 948, 953 (Miss. 1997). After the sixty-seven days attributed to the defendant are subtracted form the total days, the trial commenced on the 272nd day. Although, this would seem to be a violation of the defendant's right to a speedy trial, our analysis does not end here.

¶9. The record is void of any explanation as to why the trial date was changed from June 4, 2001, which was within the 270-day rule to June 25, 2001. Bell's original motion to dismiss was denied on June 7, 2001. Another motion was filed renewing his request for dismissal on June 14, 2001, and a hearing on the motion was held on that same day. During the hearing, the court and the prosecution offered to reschedule the trial date to an earlier date which would fall within the 270-day requirement. However, Bell's attorney responded by stating that "to back track now to bring the defendant to trial before the date that the defense was told to be prepared to go to trial, would - - would be wrong." Bell's response to the prosecution's offer to change the date showed that Bell was not prejudiced by the delay, and apparently needed extra time to prepare for the June 25, 2001, trial date. Again, no explanation appears in the record for the trial delay from June 4, 2001, to June 25, 2001.

¶10. The Mississippi Supreme Court has held that the right to a speedy trial, whether constitutional or statutory, is waivable. *Anderson v. State*, 577 So. 2d 390, 391-92 (Miss. 1991). To hold that the State violated Bell's statutory right to a speedy trial when the defense refused the prosecution's and court's offer to try the case within the 270-day time frame would place the prosecution in an impossible situation. Instead, we find that Bell's refusal to reschedule the trial date to an earlier date which would have been

within the 270 days waived his right to a speedy trial.

## II. WHETHER THE TRIAL COURT ERRED IN FINDING THAT VENUE HAD BEEN SUFFICIENTLY PROVEN.

¶11. At the close of the prosecution's case-in-chief, the defendant moved for a directed verdict arguing that the prosecution had failed to prove that the crime occurred in Warren County. The trial judge overruled the motion and took judicial notice that Vicksburg is located in Warren County. Bell argues that the trial court erred because one of the officers that testified was not working as a Vicksburg police officer on the day of the crime but as a security officer.

¶12. Several witnesses testified as to street names and that the crime occurred in Vicksburg. Officer Dowe, the above mentioned officer, working as a security guard, was not the only person to testify as to the location of the crime being in the city of Vicksburg. The eyewitnesses to the crime both testified that they worked at Vicksburg Paint and Glass located on Holly Street. Testimony also revealed that the house that was burglarized was located on Holly Street in Vicksburg.

¶13. A court can take judicial notice that a certain town or city is located within a certain county. *See Jackson v. State*, 556 So. 2d 335, 336-37 (Miss. 1990). Accordingly, we find that the trial court was correct in taking judicial notice that the crime occurred in Vicksburg which is located in Warren County.

## III. DID THE COURT ERR IN DENYING BELL'S MOTION TO SUPPRESS IDENTIFICATION EVIDENCE ARISING FROM AN IMPERMISSIBLY SUGGESTIVE PRE-TRIAL PHOTOGRAPHIC LINE-UP?

¶14. The admission or exclusion of evidence is largely within the discretion of the trial court. *Hentz v. State*, 542 So. 2d 914, 917 (Miss. 1989). A trial court's ruling on the admissibility of a witness identification is reviewed for clear error. *Neil v. Biggers*, 409 U.S. 188, 200 (1972). This Court will not reverse a trial court's denial of a defendant's motion to suppress a pre-trial photographic lineup identification unless there was a substantial likelihood of irreparable misidentification. *Wingate v. State*, 794 So. 2d 1039, 1042 (¶8) (Miss. Ct. App. 2001).

¶15. An impermissibly suggestive pre-trial identification does not necessarily preclude an in-court identification by an eyewitness who viewed the suspect at the procedure "unless: (1) from the totality of the circumstances surrounding it, (2) the identification was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Buggs v. State*, 754 So. 2d 569, 574 (¶22) (Miss. Ct. App. 2000) (citations omitted). Five factors must be examined in order to determine whether this standard has been met:

1. Opportunity of the witness to view the accused at the time of the crime;

2. The degree of attention exhibited by the witness;

3. The accuracy of the witness's prior description of the criminal;

4. The level of certainty exhibited by the witness at the confrontation;

5. The length of time between the crime and the confrontation.

*Id.*

¶16. We find that the photographic line-up viewed by Steed and Curtis was impermissibly suggestive. Bell's photograph was the only one in which a person was depicted with long hair, in an orange jumpsuit and in shackles or handcuffs. Therefore, we must go through each of the above five factors to determine whether the trial court was correct in finding that there was not a substantial likelihood of irreparable misidentification and allowing the in-court identification by Steed and Curtis.

### 1. *Opportunity of the witness to view the accused at the time of the crime*

¶17. Steed testified that she saw Bell on a number of occasions during a thirty to forty-five minute period. She saw him come out of the woods twice at the back of the house. In addition, she saw him several times around the house for a number of seconds each time. Then, she watched him as he left the home with the lawn mower and weed eater.

¶18. Curtis testified that he saw Bell around the house twice. Each time was for a few minutes. He also saw Bell as he pushed the lawn mower and carried the weed eater away from the house. Both witnesses had ample opportunity to view Bell during the commission of the crime. The crime occurred during daylight and across the street from Curtis's and Steed's workplace.

### 2. *The degree of attention exhibited by the witness*

¶19. Steed testified that Bell's actions attracted her attention. She found them to be suspicious enough to watch his movements over the next thirty to forty-five minutes. Curtis testified that he paid attention to Bell's actions for a few minutes on two occasions.

### 3. *The accuracy of the witness's prior description of the criminal*

¶20. Both Steed and Curtis described Bell as an African American male with long hair wearing a baseball cap, camouflage jacket and brown pants. The only difference was that Curtis included an approximate height and weight in his description. Their description on that day was accurate enough for one of the police officers to respond that it sounded like Bell.

### 4. *The level of certainty exhibited by the witness at the confrontation*

¶21. Steed and Curtis both testified that they quickly chose Bell out of the line-up after looking at each picture. Bell argues that they did not pay much attention to the photographs if no one noticed what he was wearing or that he was in handcuffs. However, Steed and Curtis stated that they were looking at faces not clothes. Both were certain that the man they picked out of the line-up was the man they saw on the day of the crime. They additionally testified that they were certain that Bell was the man they saw pushing the mower and weed eater down the street during their in-court identification testimony.

### 5. *The length of time between the crime and the confrontation*

¶22. Nineteen days had passed between the crime and the line-up. This Court has held that three weeks was not too great a length of time to pass between the crime and the confrontation. *Wingate v. State*, 794 So. 2d 1039, 1043 (¶16) (Miss. Ct. App. 2001).

¶23. On review, we must determine whether taken as a whole these factors "give rise to a very substantial

likelihood of misidentification." *York v. State*, 413 So. 2d 1372, 1383 (Miss. 1982). Although we have found that the line-up was highly suggestive, there is sufficient indicia of reliability in both Curtis's and Steed's identification to withstand any suggestion of impropriety. In light of the foregoing reasons, we conclude that substantial evidence supported the reliability of Curtis's and Steed's pre-trial photographic identification and in-court identification of Bell, and the trial judge's admission of the identification did not amount to clear error. This issue is without merit.

¶24. **THE JUDGMENT OF THE WARREN COUNTY CIRCUIT COURT OF CONVICTION OF BURGLARY OF A DWELLING AND SENTENCE AS AN HABITUAL OFFENDER TO LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. COSTS OF THIS APPEAL ARE TAXED TO WARREN COUNTY.**

> **McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS AND CHANDLER, JJ., CONCUR.**