SOUTHWICK, P.J., for the Court.
¶ 1. Billy Joe Smith was convicted of possession of less than one-tenth of one gram of crack cocaine. Smith appeals arguing that the circuit court erred in not granting his motion to quash the indictment and erred in denying his motion for mistrial. We disagree and affirm.
STATEMENT OF FACTS
¶ 2. On June 24, 1999, Billy Joe Smith was arrested pursuant to outstanding felony warrants for aggravated assault and attempted kidnaping. The arresting officers searched Smith and found a pipe used to smoke crack cocaine. The pipe consisted of nothing more than a metal tube with a foam rubber covering at one end. This pipe was later tested by the Mississippi Crime Laboratory and found to contain less than one-tenth of one gram of crack cocaine.
¶ 3. Smith was indicted for felony possession of cocaine and also charged as an habitual offender. The indictment was later amended to also seek a sentence enhancement. Smith was convicted after a one day trial. His sentence after a separate hearing was eight years imprisonment with no possibility of early release.
DISCUSSION

1. Motion to Quash Indictment

¶ 4. Smith argues that the circuit court should have granted his motion to quash the indictment filed on the day of trial. In this indictment, a statement of the amount of cocaine was added in handwriting to a document that otherwise was entirely typed. Smith argued that this must have been done by someone in the district attorney’s office after the grand jury returned the indictment. Smith’s position was that had the addition been made earlier, the grand jury foreman would have initialed the handwritten amount to show the grand jury’s acceptance of it.
¶ 5. The State’s explanation was that form indictments are kept in a computer file. Someone in the district attorney’s office is to type in the correct amounts before use of the indictment by the grand jury. That procedure failed in this case and the reference on the indictment to a specific quantity of drugs was not made until the grand jury was meeting. An assistant district attorney wrote on the indictment the amount of cocaine found on Smith. According to the State, this handwritten amount was on the indictment pri- or to signature by the grand jury foreman.
¶ 6. The trial court denied the motion to quash without making any factual findings as to when the quantity of drugs was written onto the indictment. Instead, the court relied on the fact that the only impact on an accused arising from the amount of cocaine was with sentencing. The amount of cocaine stated on this indictment was the minimum for sentencing purposes. This analytical approach by the trial court requires us to proceed without any trial court finding as to when the amount of drugs first appeared on the indictment.
*427 ¶ 7. Smith was charged with knowing or intentional possession of a controlled substance. Miss.Code Ann. § 41-29-139(c) (Rev.2001). Crack cocaine is a schedule.II controlled substance. Miss.Code Ann. § 41-29-115(A)(a)(4) (Rev.2001). The proof at trial was that Smith was in possession of less than one-tenth of one gram of crack cocaine. Possession of cocaine of less than one-tenth of a gram may be charged either as a felony or misdemean- or; if charged as a felony as it was here, and if guilt is found, the sentence is to be between one and four years. Miss.Code Ann. § 41-29-139(c)(l)(A) (Rev.2001). This quantity is the minimum statutory amount for possession.
¶ 8. On appeal the State agrees that the quantity of drugs is an element of the crime of possession. Quantity may only impact sentencing, but it is still an element. The trial court’s decision on the motion to quash rested on what the court perceived to be the legal insignificance of the question of amount, not on whether the grand jury had in fact issued an indictment without any amount- having been stated. Since the amount stated on the indictment placed it within the section of the statute for the minimum punishment, the court found no prejudice to Smith. This still leaves the question, however, of whether it was the grand jury that placed this crime in the minimum category.
¶ 9. The trial court’s approach could be seen as authorizing the addition of neces--sary elements of an offense to an indictment without grand jury authorization, so long as the initially omitted element affects sentencing only and the later insertion provides for the minimum sentence. That would mean that the value of property for larceny or for arson, or other facts of volume or value that do not affect guilt but only the sentencing for certain kinds of crime, could be left unaddressed by a grand jury and added later by the prosecutor’s office if the minimum is chosen. That is rather problematic. Instead of relying on this analysis, we look to whether the accused had the burden to prove some alteration of the indictment or whether the State had the burden of proving its compliance with all procedural requirements. Then we will examine the evidence offered at the suppression hearing.
¶ 10. Smith argues that the burden was on the State to prove that the indictment was handled properly. We find, though, that as the proponent of the motion, Smith had the burden of presenting some evidence to support that an alteration of the indictment occurred after the grand jury’s action. The mere allegation by an accused does not require the State or a court on its own motion to summons members of the grand jury to explain what occurred. Since Smith had the burden of at least creating sufficient doubt for a fact issue, we turn to the evidence.
¶ 11. The indictment, just as are other official acts of public bodies, is accorded a strong presumption of validity. Raper v. State, 317 So.2d 709, 712 (Miss. 1975). The only evidence Smith presented is the indictment itself, almost all of which was typed and one phrase being added with handwriting. The State explained the normal practice and gave a reason why it was not followed in this case. We simply cannot find that these facts create doubt about the indictment. Though the trial court made no finding, we conclude as a matter of law that Smith needed to present something more than the presumptively valid indictment itself to create a fact question.

2. Motion in Limine and Motion for Mistrial

¶ 12. During voir dire, the State related to the jury some basic facts about *428 this case. The prosecutor said that the two officers who arrested Smith “were out delivering or trying to find people for felony warrants.” Neither of Smith’s attorneys objected. It was not until shortly before jury selection that one of Smith’s attorneys objected and requested a mistrial. Smith’s attorney reasoned that because the State told the jury that Smith had other felony charges pending that “the jury was irreparably prejudiced by this comment and the defendant could not receive a fair trial.” The attorney alleged that the comment was a violation Mississippi Rules of Evidence 401, 402, and 403.
¶ 13. The circuit court noted that no motion in limine had earlier been filed by Smith and no objection was raised when the comment was made. The court found it to be important that the prosecutor did not detail the charges but had only explained that Smith had warrants out for his arrest. The court concluded that no mention at trial was to be made of the actual charges and that the State was to instruct its witnesses not to refer to them.
¶ 14. Similarly, Smith finds error that after the jury was selected, the prosecutor in opening statements mentioned that both the Waynesboro Police Department and South Mississippi Narcotics Task Force were searching for Smith. Smith argues that the naming of the narcotics task force would cause the jury to infer that he had committed previous drug-related offenses. In fact, though, during voir dire the prosecutor had already asked if anyone knew certain of the people who would be called as witnesses, including a person identified to the venire as being an agent with the narcotics task force. No objection was made. When that witness testified, he, without objection, said that he was working with the narcotics task force. A total of three witnesses mentioned that there were felony warrants out for Smith’s arrest. None of the witnesses detailed the charges for which Smith was being sought. At no time did Smith’s attorneys object to this information.
¶ 15. Whether to grant or deny a motion for mistrial is a decision that is left to the sound discretion of the trial judge. Sullivan v. State, 749 So.2d 983, 990 (Miss.1999). Smith’s attorneys failed to object to the comment during voir dire at the time it was made. Even on appeal no objection is made to the other described references that occurred during voir dire and later in the trial to the narcotics task force. One of the inevitable problems of trying to sanitize the testimony too rigorously is that the State was entitled to explain the reasons for the initial encounter with Smith. Hubbard v. State, 437 So.2d 430, 436 (Miss.1983); Bell v. State, 733 So.2d 372, 375 (Miss.Ct.App.1999). That explanation had to avoid creating undue prejudice, but it did not have to be artificial.
¶ 16. The trial judge was not given an immediate opportunity to pass on the issue and correct any possible prejudice at that time. Failure to object to a comment made during voir dire has been found to bar appellate consideration of that supposed error. Pulphus v. State, 782 So.2d 1220, 1223 (Miss.2001). We find no fundamental error in these comments, nor any substantial likelihood of prejudice to the defendant from them. Id. There were several references to the narcotics task force for which even now there has not been an objection made. There is no basis to reverse.
¶ 17. THE JUDGMENT OF THE CIRCUIT COURT OF WAYNE COUNTY OF CONVICTION OF POSSESSION OF COCAINE AND ENHANCED SENTENCE OF EIGHT YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS *429 WITHOUT ELIGIBILITY FOR EARLY RELEASE OR PAROLE AND FINE OF $1,000 IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER and BRANTLEY, JJ., CONCUR.