825 So.2d 678 (2002)
Jimmy Lee COOK, Jr., Appellant,
v.
STATE of Mississippi, Appellee.
No. 2000-KA-02093-COA.
Court of Appeals of Mississippi.
March 5, 2002.
Rehearing Denied May 7, 2002.
Certiorari Denied September 5, 2002.
*680 Gail P. Thompson, Oxford, attorney for appellant.
*681 Office of the Attorney General by Charles W. Maris, Jr., attorney for appellee.
Before SOUTHWICK, P.J., LEE, and CHANDLER, JJ.
SOUTHWICK, P.J., for the court.
¶ 1. After a jury trial, the appellant was found guilty of possession of a firearm. On appeal these errors are alleged: 1) inadequacy of the evidence; 2) ineffective assistance of counsel; 3) speedy trial violation; 4) prosecutorial misconduct; 5) the appearance of defendant in shackles and prison garb unduly prejudiced the defense; and 6) cumulative error. We find no error and affirm.

STATEMENT OF THE FACTS
¶ 2. Jimmy Cook escaped from the Leake County jail in November 1998. On March 23, 1999, the Holmes County Sheriffs Department received an anonymous phone call that Cook was at a specific residence in Durant, Mississippi. Deputies went to the residence. A key was obtained from Pearl Bankhead, Cook's former girlfriend who owned the residence. During the search, Cook was discovered hiding in a horizontal position in what was called a "dresser." One of the officers said the dresser "had been altered for [Cook] to lay down in it like he did. The guts of it was taken out." Cook had formerly lived in the house, and the State alleges that the dresser had been owned by Cook's mother. The dresser was described as having what appeared to be normal drawers, but the drawer fronts were actually disguised doors that when opened revealed a hiding place within. Cook was forcibly removed from the dresser by several law enforcement officers and taken into custody. After the arrest, an officer looked in the dresser where Cook had been hiding and discovered a loaded twelve-gauge sawed-off shotgun.
¶ 3. Cook was indicted for possession of a firearm by a convicted felon. After a two day jury trial, Cook was found guilty and sentenced to serve a term of three years. He appeals.

DISCUSSION

I. Effectiveness of Counsel
¶ 4. Cook asserts that his counsel was ineffective. Proof of such a claim is in two parts. First, the defendant must show that his counsel was ineffective; and second, this deficiency must have prejudiced the defendant. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686, 104 S.Ct. 2052. The burden is on the defendant to prove both elements. Pipkins v. State, 756 So.2d 777, 779 (Miss.Ct.App.1999). A strong but rebuttable presumption is present that "counsel's conduct falls within a broad range of reasonable professional assistance." McQuarter v. State, 574 So.2d 685, 687 (Miss.1990).
¶ 5. Cook finds two instances of misconduct. He alleges that his counsel had no meeting with him until two days before trial. Though not optimal, there is no basis on which to conclude in the abstract that such a late meeting is either ineffective or was prejudicial. Without specific prejudicial results being shown of that late concentration on Cook's case, no grounds for reversal exist.
¶ 6. Next, Cook alleges that his counsel released two subpoenaed witnesses who would have been helpful to the defense. *682 One allegedly would have testified that the dresser in which Cook was hiding contained clothes, which would have been contrary to testimony from other witnesses that the dresser was empty except for Cook and the shotgun. The second potential witness "may have shed light on the identity of the sawed off shotgun and its origin." Cook's counsel interviewed these potential witnesses and for some reason decided that their testimony was not needed. We are not privy to what was said during the discussions. That is in part why the determination of whether to call a witness is within the realm of trial strategy. The strategy will not be second-guessed on appeal based just on these bare assertions. King v. State, 679 So.2d 208, 211 (Miss.1996).

II. Prosecutorial Comments
¶ 7. Cook complains about comments made by the prosecution regarding the defense failure to call certain witnesses. This is what occurred during cross-examination of the defendant Cook.
Q: You told us that your cousin who bought you down here is now deceased and you didn't subpoena him either to testify?
A: No, he got killed a few months ago.
Q: So, basically, what you're asking is that the jury just believe you and believe that you had all of these other contacts, but there's no evidence, whatsoever, of any of them, are there?
A: Repeat that.
Q: You are asking the jury to believe this story that you fabricated here today without any evidence of that. You haven't called a single witness, haven't subpoenaed a single witness to testify to any of the things that you have testified to.
A: No, I haven't fabricated a story. I'm just asking them to believe the truth.
Q: You haven't called a single witness or subpoenaed a single witness to verify a thing
A: Yes, I have.
Mr. Gilmore: Your Honor, I object. It's irrelevant whether he's called a witnesses or not.
Mr. Powell: He's on cross-examination, Your Honor. I've got a right to inquire into his story.
The Court: Sustained.
¶ 8. The general rule is that it is "improper for the prosecution to comment on the failure of the defendant to call a witness equally available to both parties." Fox v. State, 756 So.2d 753, 761 (Miss. 2000). The only specific witness referenced, a cousin, was equally unavailable to both parties as he was deceased. There was also an apparent reference to the owner of the house in which Cook was captured. This woman, Pearl Bankhead, was the mother of Cook's child and had a long-term relationship with Cook. She even retained a piece of furniture that he owned, the dresser.
¶ 9. We find no necessity of determining the relative availability of any specific or potential witnesses to whom the State might have been referring. The objection to this inquiry was sustained. Cook's attorney sought no further relief. When the defense does not seek to have the jurors admonished to disregard improper questioning, the court's sustaining of the objection generally prevents a finding of reversible error from being made on appeal. Cotton v. State, 675 So.2d 308, 315 (Miss.1996). We find that rule fully applicable here.

III. Speedy Trial Claims
*683 ¶ 10. An alleged failure to bring a defendant to a timely trial may be claimed to violate the constitution, a specific statute, or both. We find that only the statutory argument was pursued at the trial court. At the hearing on the motion, the only discussion by the court and the only ruling was based on the statutory claim. The two bases are distinct and require separate analysis. Simmons v. State, 678 So.2d 683, 686 (Miss.1996). Cook failed to acquire a ruling on the constitutional issue when given the opportunity to present his motion. "It is the responsibility of the movant to obtain a ruling from the court on motions filed by him and failure to do so constitutes a waiver of same." Martin v. State, 354 So.2d 1114, 1118 (Miss.1978). An appellate court should not be the first tribunal in which a party pursues a claim. The constitutional issue is therefore waived. Bell v. State, 733 So.2d 372, 376 (Miss.Ct.App. 1999).
¶ 11. Cook's statutory argument was properly preserved for appeal. "Unless good cause be shown and a continuance duly granted by the court, all offenses for which indictments are presented to the court shall be tried no later than two hundred seventy (270) days after the accused has been arraigned." Miss.Code Ann. § 99-17-1 (Rev.2000). The date of Cook's arraignment was April 19, 2000, while his trial began on October 9, 2000. That is 172 days between his arraignment and trial date. No violation of this statute occurred.

IV. Sufficiency of Evidence
¶ 12. Cook's motion for a directed verdict at the close of the State's case in chief was denied. Cook then proceeded to present his witnesses, which waives the issue of the sufficiency of the evidence before the jury at that point in time. Holland v. State, 656 So.2d 1192, 1197 (Miss.1995). Instead, we look at the last time that Cook presented a motion that challenged evidentiary sufficient.
¶ 13. The last time that Cook raised the issue of the insufficiency of the evidence was when he presented a peremptory instruction for acquittal. This was a challenge to the sufficiency based on all the evidence presented at trial. When a peremptory instruction is offered, the trial court should reflect on all of the evidence that has been presented and do so in the light favorable to the State. In performing that function, the court should make such reasonable inferences from the evidence that are consistent with guilt. A judgment of acquittal should be given only if that analysis convinces the trial court that reasonable jurors could not find guilt beyond a reasonable doubt. Gavin v. State, 473 So.2d 952, 956 (Miss.1985).
¶ 14. What is beyond dispute is that when arrested, Cook was a convicted felon. There was no challenge to the testimony that a loaded twelve-gauge sawed-off shotgun was discovered in the dresser in which Cook was found hiding. The only element that is disputed is whether Cook possessed the firearm. Cook denies that he possessed it despite that he was essentially lying on it while hiding in an attempt to evade arrest. The brother of the owner of the house testified that he was confident that the shotgun did not belong to his sister Pearl Bankhead. Ms. Bankhead did not testify.
¶ 15. Evidence must establish that the "defendant was aware of the presence and character of the particular substance [the shotgun] and was intentionally and consciously in possession of it." Sumrall v. State, 758 So.2d 1091, 1096 (Miss.Ct. App.2000). Possession can be shown by actual physical possession or by constructive possession that arises from dominion *684 or control. Id. While proximity is normally paramount to proving the offense has been committed, more is required when other incriminating evidence is absent. A rebuttable presumption of constructive possession arises against a defendant who has exclusive use of the premises in which contraband is discovered. Id. If the premises is not in the exclusive possession of the accused the State must present some "competent evidence connecting him with the contraband." Id. at 1096.
¶ 16. The State produced evidence that Cook was discovered hiding in a dresser in immediate proximity to a shotgun. There were testimony that when Cook was captured, no clothes or other items normally found in a dresser was present, only Cook and the shotgun. In addition, Sheriff March testified as to Cook's statement at the scene:
Q: What if any statements did Mr. Cook make concerning that shotgun?
A: I asked him would he use that shotgun. He said he would use it if he had to.
¶ 17. This was Cook's admission of sufficient dominion and control over the shotgun as to amount to being prepared to use it. The peremptory instruction that Cook offered was properly denied.

V. Shackles and Prison Garb
¶ 18. Cook argues on appeal that he was required at trial to wear "jail garb" and shackles in the presence of the jury. The allegation that he was made to wear jail clothing is not supported in the record either by an objection or by any factual reference to his wearing such clothing. As to that issue we have nothing to review. Smith v. State, 530 So.2d 155, 161-62 (Miss.1988) (objection); Mason v. State, 440 So.2d 318, 319 (Miss.1983) (record evidence).
¶ 19. What is supported by the record is that Cook had to wear leg restraints in the presence of the jury. Though not normally permitted, there are circumstances in which the State may restrain a defendant. When reasonable grounds exist to apprehend a danger of escape, a trial judge has discretion to require shackles or other restraints. Rush v. State, 301 So.2d 297, 300 (Miss.1974). Here, the defendant had once escaped and successfully avoided capture for four months.
¶ 20. The issue of the leg restraints arose before the jury was selected. At a hearing on a motion to declare a mistrial because of the shackles, the defense alleged that Cook had been brought into the courtroom while the jury venire was present. The prosecution responded that Cook had entered the courtroom through a door next to the judge's bench, had walked only three or four feet to the defense table, and the table itself had a skirt around it that would prevent jurors from seeing the restraints. The witness indicated that no member of the venire likely saw Cook's leg restraints.
¶ 21. The trial judge denied the mistrial motion and permitted the leg restraints because he found Cook to be a flight risk. When Cook testified, he was placed in the witness chair before the jurors entered the room and remained there until after they left, was told not to stand when sworn in, and in these ways his leg restraints were kept from the view of the jury.
¶ 22. The trial court took reasonable measures both to protect the State's interests in restraining Cook as well as protecting Cook's presumption of innocence in front of the jury. There was no error.

VI. Cumulative Effect of Alleged Errors
*685 ¶ 23. Cook claims that the cumulative effect of the various alleged errors denied him a fair trial. Since we find no individual error, there is nothing to accumulate.
¶ 24. THE JUDGMENT OF THE CIRCUIT COURT OF HOLMES COUNTY OF CONVICTION OF POSSESSION OF A FIREARM BY A CONVICTED FELON AND SENTENCE OF THREE YEARS TO RUN CONSECUTIVELY TO ANY SENTENCES PRESENTLY BEING SERVED IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS ARE ASSESSED TO HOLMES COUNTY.
McMILLIN, C.J., KING, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR.